# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
UNITED STATES OF AMERICA,

                           Plaintiff,

      -against-

MAIR FAIBISH,

                           Defendant.

------------------------------------------------------------x

**MEMORANDUM OPINION**

**12-CR-265 (ENV)**

## VITALIANO, D.J.

On April 20, 2012, the grand jury indicted Mair Faibish for his alleged involvement in a check kiting scheme. During the course of discovery, a Suspicious Activity Report ("SAR"), dated February 22, 2010 ("February SAR"), was produced inadvertently by the government. The February SAR referenced a second SAR, dated October 9, 2009 ("October SAR"). Defendant requested production of the October SAR. The government refused defendant's request, and defendant moved to compel production. (Mem. in Support of Production (Sept. 21, 2012).) The government opposed the motion and cross-moved for the return of the February SAR. (Ltr. (Oct. 5, 2012).) For the reasons given at the motion hearings held on October 19, 2012 and November 19, 2012, defendant's request for the production of additional SARs was denied and the government motion for return of the inadvertently produced SAR was granted. This Memorandum Opinion provides further explanation of these decisions.

The parties are familiar with the facts of this case, and therefore they are not further detailed.

### Discussion

In determining whether to order the return of the February SAR, the Court weighed three

factor: (1) Faibish's right to the document under *Brady v. Maryland*, 373 U.S. 83 (1963), and other disclosure obligations; (2) the government's interest in protecting the secrecy of SARs; and (3) equitable interests surrounding the inadvertent production of the February SAR.

Defendant has not established a definitive right to any of the reports under *Brady* or otherwise. Although Faibish labels the February SAR as *Brady* material, (Ltr. (Oct. 26, 2012) at 1; Mem. in Support of Production (Sept. 21, 2012) at 15-16), he has not demonstrated why the government has not fulfilled its duty under *Brady* by describing any exculpatory content of the February SAR in its letter, (Ltr. (Oct. 4, 2012)), and by its production of the actual documents underlying the transactions relevant to the inadvertently produced SAR as well as any other SAR that might have been generating in connection with the transactions that are the subject of this indictment, (Tr. at 8-9), including documents related to "the returned check activity . . . between October 28, 2009 and November 17, 2009," (February SAR at 3).

The Court was and is persuaded, however, that the government has a strong interest in maintaining the confidentiality of SARs generally.[1] Indeed, for precisely this reason, courts have withheld SARs where the underlying documents are made available to the defendant. *See United States v. LaCost*, 2011 WL 1542072 (C.D. Ill. 2011); *see also United States v. Evanson*, 2007 U.S. Dist. LEXIS 80198 (D. Utah 2007).

Finally, the Court notes that the circumstances surrounding the mistaken production are not so egregious as to mitigate the government's argument for secrecy.[2] As trial nears, some or

---

[1] The Court notes that SARs should be released to defendants in certain situations. *E.g., United States v. Holihan*, 248 F. Supp. 2d 179, 185 (W.D.N.Y. 2003) ("[S]uch SARs are of use to Defendant to impeach government witnesses and, as such, will have a significant effect on the defense and thus be material to the defense. . . . Accordingly, the Government was ordered to produce any such SARs insofar as they were under government control.") (citation omitted).
[2] Borrowing the test used to determine waiver of attorney client privilege where inadvertent production is concerned, the Court considered: (1) the precautions taken to avoid disclosure; (2)

2

all of these documents may be subject to disclosure as a result of the witnesses whom the government will call to testify. The government's future obligations are in no way altered by this ruling.

Given the totality of the circumstances, the Court held that defendant must return the February SAR. To the extent production becomes appropriate at a later stage in these proceedings, the government has acknowledged its duty to make the SAR available. (Tr. at 12-13.)

SO ORDERED.

Dated: Brooklyn, New York
November 30, 2012

s/ ENV

_____
ERIC N. VITALIANO
**United States District Judge**

---

the scope of discovery; (3) the time taken to correct the mistaken production; and (4) fairness. *United States v. Gangi*, 1 F. Supp. 2d 256, 264 (S.D.N.Y.) (applying the civil test for waiver of privilege in the criminal context). The first and third factors weighed nominally for defendant. Documents provided by Signature Bank were turned over without review to avoid delay. (Ltr. (Oct. 23, 2012) at 3.) However, as defendant benefited from the speed of the government's production, he was and is hard pressed to use the government's accommodating decision to his benefit. Similarly, the government's failure to react to defendant's first reference to the February SAR in its July 31, 2012 letter, (Ltr. (Oct. 26, 2012) at 1-2), creates some momentum for defendant's argument. However, the very day the government received defendant's letter of September 5, 2012, which contained a second reference to the February SAR, it requested that defendant return the document. (Ltr. (Oct. 23, 2012) at 2.) The remaining factors weighed heavily for the government. Over 84,000 Bates-numbered pages were turned over to defendant, creating a risk that a privilege-style issue would be overlooked in order to facilitate speedy production. More importantly, at this stage in the proceedings, return of the document does not prejudice defendant. The government has stated that the factual content of the February SAR has been provided in another format, *id.*, and has acknowledged the need for production to be reevaluated as the case progresses, (Tr. at 12-13).

3