UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
UNITED STATES OF AMERICA,

           -against-

MAIR FAIBISH,
                                Defendant.
-----------------------------------------------------------X

**MEMORANDUM & ORDER**
12-cr-265 (ENV)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ AUG 3 - 2015 ★
BROOKLYN OFFICE

VITALIANO, D.J.,

On March 14, 2014, a jury returned a verdict convicting Mair Faibish of the crimes of conspiracy to commit bank and securities fraud, bank fraud, and making false statements to the Securities and Exchange Commission ("SEC"). Following the verdict, Faibish moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, challenging the sufficiency of the evidence, and, in the alternative, sought a new trial, pursuant to Rule 33. On August 25, 2014, those motions were denied.[1]

On January 13, 2015, Faibish moved for an evidentiary hearing,

---

[1] The decision denying those motions is reported at United States v. Faibish, No. 12-cr-2625(ENV), 2014 WL 4273299 (E.D.N.Y. Aug. 28, 2014). Familiarity of the parties with that decision is presumed and the facts it details will not be repeated here for that reason.

1

founding his request in United States v. Fatico, 579 F.2d 707 (2d Cir. 1978) and § 6A1.3 of the U.S. Sentencing Guidelines Manual, ("When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor ... provided that the information has sufficient indicia of reliability to support its probable accuracy."). Faibish asserts that several facts crucial to his sentencing were not proven at trial and must be established at a Fatico hearing before sentencing. They are: (1) the loss amount; (2) the number of victims; (3) the use of sophisticated means; (4) the substantial endangerment of a financial institution; and (5) his role as a leader of the scheme. He also argues he should receive guidelines mitigation for acceptance of responsibility.[2]

The government filed a letter brief in opposition on January 15, 2015, arguing that the facts Faibish disputes were established at trial, rendering an evidentiary hearing unnecessary.

---

[2] While this motion was sub judice, Faibish once again changed counsel. The Court notes that the switch to new counsel did not appear to result in any change in strategy. New counsel was not given permission to re-brief the motion, but will be heard at the sentencing hearing when the offense level, criminal history category, and resulting guideline range will actually be determined.

After reviewing the motion submissions, and, for the following reasons, the Court finds that a <u>Fatico</u> hearing is not warranted. Any additional material information or argument relating to the calculation of the guidelines and the imposition of sentence may be presented by defendant without need for an evidentiary hearing.

## Discussion

No defendant is entitled, as of right, to a <u>Fatico</u> hearing to resolve disputed sentencing issues. Circuit precedent provides that a sentencing "court is not required, by either the Due Process Clause or the federal Sentencing Guidelines, to hold a full-blown evidentiary hearing in resolving sentencing disputes. All that is required is that the court afford the defendant some opportunity to rebut the Government's allegations." <u>United States v. Slevin</u>, 106 F.3d 1086, 1091 (2d Cir. 1996) (internal quotation marks and citations omitted). "[T]he procedure followed in resolving disputed factors at sentencing rests in the district court's sound discretion." <u>United States v. Prescott</u>, 920 F.2d 139, 144 (2d Cir. 1990). At the same time, it must be acknowledged that "[a]n evidentiary hearing may sometimes be the only reliable way to resolve disputed issues." U.S. Sentencing Guidelines

("U.S.S.G.") Manual § 6A1.3 cmt. (2014).

When deciding between a <u>Fatico</u> hearing and another means of resolving a factual dispute, the sentencing court should consider "the nature of the dispute, its relevance to the sentencing determination, and applicable case law." <u>Id.</u>; <u>see also</u> <u>United States v. Brinkworth</u>, 68 F.3d 633, 640 (2d Cir. 1995) (upholding trial court's decision not to grant a <u>Fatico</u> hearing where the court reviewed the legal memoranda of the parties, the grand jury testimony, and heard oral argument at sentencing).

The decision to hold or not to hold a <u>Fatico</u> hearing turns largely on whether the contested information is relevant to the trial court's potential sentence. <u>See</u> U.S.S.G. Manual § 6A1.3 cmt. (2014). If the contested information is relevant to the potential sentence, then it need only be proven by a preponderance of evidence. <u>See</u> <u>United States v. Ruggiero</u>, 100 F.3d 284, 290 (2d Cir. 1996). Even then, a hearing may be unnecessary. "[O]ral and written statements" and a chance to submit evidence constitute "adequate opportunity" to challenge a sentence. <u>See</u> <u>Brinkworth</u>, 68 F.3d at 641. If the sentencing court does not plan to take the contested information into account, it need not grant a <u>Fatico</u> hearing to resolve the factual dispute.

A. Loss Amount

First, Faibish claims there is a genuine issue of fact as to the calculation of the total loss resulting from his crimes, which the Presentence Investigation Report ("PSR") lists as $32 million. Faibish contends, brazenly, the loss amount is $0. He also points to contradictions in Signature Bank's victim statement, which alleges that its loss was "only" $21 million, rather than the $26 million listed in the PSR. Moreover, Faibish claims the roughly $6 million loss to Synergy Brands's shareholders is not attributable to him, but, rather, to his criminal associate, Giuseppe Gatti. (Def. Br. at 4.) In response, the government points to the Court's order of forfeiture in the amount of $51,166,000.

On this tug of war, the Court's analysis may be cut short, as it does not plan to peg Faibish's fate to a guidelines-computed loss amount. Defendant's fulminations about the loss table are quite understandable. The loss table is but one example of the seemingly mindless acceleration of penalties for economic crimes incorporated in the current Sentencing Guidelines regime. The Court takes notice of the United States Sentencing Commission's ("U.S.S.C.") most recent Economic Crime Public Data Briefing (Jan. 9, 2015), which reflects that the loss table was used in 85% of § 2B.1.1 sentencings in

2012.³ United States Sentencing Commission, <u>Analysis of Federal Sentencing Date for Economic Crime Offenders</u> (Jan. 9, 2015), available at http://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20150109/fraud_briefing.pdf. The Court also takes notice that the American Bar Association Task Force on the Reform of Federal Sentencing for Economic Crimes offers an alternative model to consider in sentencings for crimes of the stripe committed by Faibish. See <u>A Report on Behalf of the American Bar Association Criminal Justice Section Task Force on the Reform of Federal Sentencing for Economic Crimes</u>, (Nov. 10, 2014), <u>available at</u> http://www.americanbar.org/content/dam/aba/uncategorized/criminal_justice/economic_crimes.authcheckdam.pdf. The report of that task force, like the proposed 2015 amendments to the Sentencing Guidelines which, if adopted, would be effective November 15, 2015, suggests reducing the impact of the loss amount in sentencing and increasing the attention paid to the significance of the loss to each victim. <u>Id.</u> Considering these alternate models, and applying common sense, the Court

---

³ Faibish was convicted of conspiracy to commit bank and securities fraud, in violation of 18. U.S.C. §1348(1), and 18 U.S.C. § 1344, respectively, as well as bank fraud, in violation of 18 U.S.C. § 1344, and making false statements to the SEC, in violation of 15 U.S.C. § 78ff(a). Section § 2B1.1 of the Sentencing Guidelines Manual applies to each of these crimes.

finds that a strict application of the existing guidelines derived from the existing loss table in this case would unfairly balloon Faibish's sentencing range beyond any reasonable proportion to his crimes.

As noted earlier, because the precise loss amount will not factor into, and is therefore not a component of the Court's sentence, a <u>Fatico</u> hearing on this point is not warranted. The Court is mindful, at the same time, of its obligation to first compute Faibish's offense level and criminal history category in accord with the algebra of the existing guidelines before imposing sentence. <u>See</u> <u>United States v. Preacely</u>, 628 F.3d 72, 79 (2d Cir. 2010) ("The district court should ordinarily begin all sentencing proceedings by correctly calculating the applicable Guidelines range.") (internal quotation marks and citation omitted). This is so even if the sentencing court does not intend to follow the advice that the formula yields. Satisfying that obligation does not compel a <u>Fatico</u> hearing either.

With respect to the Court's obligation to compute the guidelines algebra, Faibish is, of course, entitled to be heard. The argument he presents, though, suggests that the fact that there was a trial has apparently escaped his memory. He persists in the fantasy that he is not guilty, seeks a <u>Fatico</u> hearing because the loss amount, he says the hearing will show, is $0. This issue was

vigorously contested and it was established at trial that the loss amount from Faibish's check kiting was at least $21 million, that is, the low-ball loss claimed by Signature. The loss table requires a 22-point enhancement for a loss of $20 million up to $50 million. No one seeks, nor does the Court plan to entertain, a loss amount that would require, as a matter of guidelines algebra, a greater enhancement. U.S.S.G. Manual § 2B1.1(b)(1)(L) (2014). The Court finds the loss necessary to support that enhancement, under the current guidelines, was established conclusively at trial. On this ground too, Faibish's request for a <u>Fatico</u> hearing as to the applicable loss amount is denied.

### B. Number of Victims

Next, Faibish asserts there exists an issue of fact as to the number of victims of his criminal scheme, which he also contends is 0. The PSR puts his offenses in the category of one affecting 250 or more victims, resulting in a 6-point enhancement in his offense level. Again, Faibish argues that he did not cause any loss to the shareholders of Synergy Brands, because, while he was CEO, Synergy's stock value was high. (Def. Br. at 4.) The losses, he claims, began after the company filed for bankruptcy, when he was no longer CEO. <u>Id.</u> Moreover, consistent with his earlier argument, Faibish maintains that

Signature was not a victim of *his* actions, laying the blame on his co-conspirator, Gatti, and the Canadian banks for causing the overdraft that tumbled the house of cards. He is blameless, he says. Id. The government sharply retorts that the number of victims (like the loss amount) was established at trial, noting that Synergy's 2008 Annual Report, which was admitted into evidence, showed it then had 2181 individual shareholders. (Gov. Br. at 3). Faibish does not dispute that, under the Sentencing Guidelines, these shareholders are victims. 18 U.S.C. § 3663 ("The term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.").

Notwithstanding the issues presented by the fluidity in the victim table related to the Sentencing Commission's proposed 2015 amendments, in deciding whether to take into account the number of victims, the Court takes notice of the U.S.S.C. Briefing, which reflects that the victims table was applied in 22.8% of all offenses subject to § 2B1.1 in 2012. United States Sentencing Commission, <u>Analysis of Federal Sentencing Date for Economic</u>

Crime Offenders (Jan. 9, 2015), available at http://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20150109/fraud_briefing.pdf. The judicial luminaries trending away from the current victims table light the substantive path the Court intends to follow in sentencing Faibish. Those luminaries lead to other impact analytics that sentencing courts might consider in lieu of a nose count analysis. Since the Court does not intend to follow the victims table, it need not further consider defendant's claimed entitlement to a Fatico hearing. Nonetheless, as discussed above, that intention does not absolve the Court of its first order of business, which is to accurately compute the defendant's guidelines in accord with the then applicable guidelines manual. As the current manual makes clear, the Court is required to make reference to the extant economic crimes victims table. There was ample evidence introduced at trial to support, as the PSR recommends, a finding that Faibish's criminal scheme harmed 250 or more victims. A Fatico hearing on this point, the Court finds, is unnecessary in light of that record. Defendant's request for a hearing is denied as to this issue.[4]

---

[4] The Court also notes that, as of April 30, 2015, the U.S.S.C.'s amendments to § 2B1.1 include a substantial change to the victims table, which reflects an emphasis on the extent of harm to each victim, not merely the number of victims.

10

C. Sophisticated Means

Third, Faibish claims there are issues of fact as to whether his crime involved sophisticated means, which, if established, must result in another 2-point enhancement. "Sophisticated means" are defined in Comment 9 to U.S.S.G. § 2B1.1 as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." Examples of conduct involving "sophisticated means" include "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate

---

As amended, the first tier of the victims table would provide for a 2-level enhancement where the offense involved 10 or more victims of mass-marketing, or if the offense resulted in substantial financial hardship to one or more victims. A "4-level enhancement applies if the offense resulted in substantial financial hardship to five or more victims, and [a] 6-level enhancement applies if the offense resulted in substantial financial hardship to 25 or more victims." U.S.S.C., Amendments to the Sentencing Guidelines (Apr. 30, 2015), available at http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20150430_RF_Amendments.pdf.

"Substantial financial hardship" is determined by considering whether the offense resulted in the victim (i) become insolvent; (ii) filing for bankruptcy; (iii) suffering substantial loss of a retirement, education, or other savings or investment fund; (iv) making substantial changes to his or her employment, such as postponing his or her retirement plans); (v) making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and (vii) suffering substantial harm to his or her ability to obtain credit. Id.

Thus, though Faibish is on the current table subject to a 6-point enhancement, the Court is aware that under the amended guidelines, likely soon to be effective, this enhancement may be lower.

11

shells, or offshore financial accounts." U.S.S.G. § 2B1.1, cmt. (9)(B). Faibish claims his crime was not "extremely complex" and that his companies were legitimate, not shells.

According to the Sentencing Commission's most recent briefing, the sophisticated means enhancement has been applied in 13.1% of all § 2B1.1 offenses in 2012. Thus, most courts seem to recognize the "sophisticated means" enhancement for what it is: a double counting akin to imposing an extra enhancement for firearms that propel larger caliber bullets. In line with this understanding, the Court does not intend to apply it in formulating its sentence.

As with other factors previously discussed, the fact that the Court does not intend to take the use of "sophisticated means" into account in calculating the sentence, of course, does not mean the Court has found that this enhancement would not be a factor in the algebra used to compute Faibish's guidelines. Furthermore, and regardless of what the Court were to decide with respect to this enhancement, a <u>Fatico</u> hearing is not required to assist the Court in making that decision nor Faibish in making his argument. All of the facts necessary to make the determination as to the propriety of such an enhancement were fully and extensively laid out at trial. Argument alone

would be more than sufficient to afford Faibish the required opportunity to oppose the enhancement.[5]

D. Substantial Endangerment of a Financial Institution

Fourth, Faibish claims that there are issues of fact as to whether his offense "substantially endangered" Signature's financial security, which, if proved, would make a 4-point enhancement applicable to his guidelines calculation. The enhancement applies if the victim "suffered a substantial reduction in the value of its equity securities or the value of its employee retirement accounts" or to have had "[t]he liquidity of [its] equity securities . . . substantially endangered." U.S.S.G. § 2B1.1, cmt. (13)(B)(ii). Faibish argues that Signature Bank, which is valued at $7.83 billion and reported more than $93 million in quarterly revenue in September 2008, was not discernably affected by the offense. He points out that Signature's stock price

---

[5] Under the proposed amendments to the guidelines, the "sophisticated means" enhancement applies only where the defendant intentionally engaged in or caused conduct constituting sophisticated means, deleting the prior language that applied the enhancement if "the offense otherwise involved sophisticated means." U.S.S.C., Amendments to the Sentencing Guidelines (Apr. 30, 2015), available at http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20150430_RF_Amendments.pdf. The amendment, though significant in that it shifts the emphasis to the offender's intent and individual culpability, is not binding on the Court in calculating Faibish's sentence.

13

"consistently rose with no major drops in value" from 2009 to 2012, and that its net income and total assets increased in 2009. The government has not responded to this argument, not even identifying evidence in the record demonstrating that Signature Bank was, in fact, "substantially endangered" by the offense. That silence comes as no surprise. A $23 million loss for a financial institution of Signature's size does not come near crossing into this enhancement zone, much less is an evidentiary hearing required to guarantee Faibish a fair opportunity to attack its application at sentencing for any purpose. The request for a <u>Fatico</u> hearing is denied.

### E. Defendant's Role

Next, Faibish argues that there are issues of fact as to whether he was a leader and organizer of a criminal activity involving five or more participants, which would result in a 4-point enhancement. Faibish claims it was Gatti, not he, who was the "mastermind" behind the scheme. A debate as to whether Faibish or Gatti was the more culpable is academic. There are no material fact issues to resolve. In more than one aspect, defendant's motion seems to pretend that there was no trial. There was a trial. It established clearly and convincingly that Faibish was, in fact, a leader of the scheme. And, again, the

scheme was fully explored in that trial. Whether there were only two co-equal participants (no leader) or there were five or more in total can be divined from the trial record. Consequently, the Court finds, that defendant will have more than adequate opportunity to make argument about the applicability of this enhancement at the sentencing hearing. No further evidentiary hearing to resolve facts Faibish disputes is required and the request for a Fatico hearing on that point is denied.

F. Acceptance of Responsibility

Finally, and the most mystifying of all of his arguments, Faibish contests the PSR's determination that he has not accepted responsibility for his crimes, recommending that he be denied a 2-point downward adjustment. Notwithstanding his representations on this motion that he caused no loss, and therefore, victimized no one, he claims that he demonstrated acceptance of responsibility when, after discovering that Gatti had stopped payment on the last batch of kited checks, he reported those stopped payments to Signature Bank. He also claims that, by cooperating with the investigation and by making payments pursuant to his repayment plan with Signature, he has shown acceptance of responsibility for his actions.

15

Ordinarily, the downward adjustment for acceptance follows a plea of guilty, which spares the government and the Court of needless expenditures of time and resources, given that the defendant recognizes his criminal fault, relieves the government of the burden of proving it, accepts his responsibility for his crime and waives his right to trial. Although none of that happened here, it is certainly true that, as rare as it might be, an adjustment for acceptance of responsibility can be awarded to a defendant convicted after trial. See United States v. Broxmeyer, 699 F.3d 265, 284 (2d Cir. 2012) ("To be sure, the adjustment can apply in 'rare situations' to a defendant who goes to trial to assert and preserve issues that do not relate to factual guilt where pre-trial statements and conduct evidence acceptance.") In any event, what is pertinent on this motion is the opportunity to make that argument will be afforded in undiminished fashion at sentencing, without the necessity of a fact hearing. Faibish's request for one on this ground is also denied.

## Conclusion

For the above stated reasons, defendant's request for a Fatico hearing is denied in all respects. Sentencing is currently calendared for August 19, 2015. This motion is without prejudice to the usual written sentencing submissions,

which are invited in accordance with the Court's individual rules set forth at

https://www.nyed.uscourts.gov/pub/rules/ENV-MLR.pdf.

**So Ordered.**

s/Eric N. Vitaliano

_____
**ERIC N. VITALIANO**
**United States District Court**

**Dated:**    Brooklyn, New York
            July 16, 2015