FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ AUG 22 2017 ★
BROOKLYN OFFICE
Rec'd
8/22/17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
UNITED STATES OF AMERICA,                              :

             -against-                              :

                                          :

MAIR FAIBISH,                                          :

                          Defendant.    :
-------------------------------------------------------- x

**MEMORANDUM & ORDER**

12-cr-265 (ENV)

VITALIANO, D.J.

      Putting aside the question of "how many angels can dance on the head of a pin," as part

of this episode, in compliance with the Mandatory Victims Restitution Act of 1996 ("MVRA"),

the government seeks, on behalf of six victims, on order of restitution against defendant Mair

Faibish in the aggregate amount of $43,018,328.91. *See* ECF Dkt Nos. 255, 261, 277. Faibish

objects solely with respect to awards for two of those six victims: (1) Signature Bank and (2)

one fiduciary of Synergy Brands, Inc. ("Synergy"), whose identity will be maintained

confidentially (the "Synergy Fiduciary"). *See* ECF Dkt. No. 256; Faibish 6/1/17 Ltr.[1] Having

considered the submissions of the government and Faibish, along with the affidavit of loss and

supporting documentation furnished by the Synergy Fiduciary, Faibish's objections are resolved

in the manner and for the reasons set forth below. The government is directed to file, within 14

days of the date that this Order is entered on the docket, a revised restitution application

consistent with this Order.

---

[1]    Faibish also objected to the restitution claim previously advanced by another purported
victim. However, that individual has since withdrawn his claim in its entirety, rendering
Faibish's objection to his proposed award of restitution moot. *Compare* ECF Dkt. No. 256 at
3, *with* ECF Dkt. No. 261 at 2-3.

1



Discussion

I.    <u>Signature Bank</u>

Faibish's only objection to an award of restitution to Signature Bank rests on his belief that Signature Bank should be precluded from receiving restitution because it "bears responsibility for its losses for allowing [him and a co-conspirator] . . . an irresponsible and astonishing fourteen day float time." ECF Dkt. No. 256 at 2. This objection must be rejected out of hand, however, because "an innocent crime victim has no duty to detect a crime being perpetrated against it," and, "[t]hus, any opportunity [the victim] might have had to 'mitigate' losses by detecting [the defendant's] violation sooner is irrelevant to the order of restitution." *United States v. Holland*, 394 F. App'x 766, 768 (2d Cir. 2010) (citing *United States v. Thomas*, 377 F.3d 232, 243 (2d Cir. 2004) and *United States v. Berman*, 21 F.3d 753, 757 (7th Cir. 1994)); *see United States v. Zafar*, 291 F. App'x 425, 429 (2d Cir. 2008) ("Nothing in the detailed provisions of the [MVRA] contemplates that a defendant guilty of criminal fraud can escape mandatory restitution by requiring district courts to conduct mini-trials on the possible contributory negligence of the very persons victimized by the defendant."). In the absence of any other objections by Faibish, the Court finds that the government has established that Signature Bank is entitled to restitution in the amount sought: $21,431,890.00.

II.    <u>Synergy Fiduciary</u>

Faibish broadly objects to the prospect of the Synergy Fiduciary receiving any restitution whatsoever, characterizing his request for $21,102,170.00 as "wildly exaggerated as well as unsubstantiated." Faibish 6/1/17 Ltr. at 2. The objections note, among other things, that this victim sought a lesser amount during Synergy's bankruptcy proceedings. *See id.*; ECF Dkt. No. 256 at 2. Based on the submissions made by all interested parties, the Court is compelled to

2

agree that, in certain respects, this restitution claim is overstated—or, at the very least, is not supported by the present record. In other words, the government has not yet met its burden to establish, by a preponderance of the evidence, the amount of loss for which the Synergy Fiduciary is entitled to restitution. *See* 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. . . ."). Accordingly, before the Court can enter an award of restitution that includes the Synergy Fiduciary's claim, the following three issues, in particular, must be resolved.

First, the documentation underlying the Synergy Fiduciary's affidavit of loss appears to indicate that he is seeking to recover more than $6 million based on purchases of Synergy stock that he made long before the crimes for which Faibish has been convicted. As a general rule, however, restitution may be ordered only for those losses that were actually caused by the offense or offenses of conviction. *See United States v. Paul*, 634 F.3d 668, 676 (2d Cir. 2011) ("In determining the proper amount of restitution, a court must keep in mind that '[t]he loss must be the result of the fraud.'" (alteration in original) (citation omitted)); *see also United States v. Coriaty*, 300 F.3d 244, 252 (2d Cir. 2002) ("restitution may be ordered" to "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern" (quoting 18 U.S.C. § 3663A(a)(2))). The government neither has acknowledged that the Synergy Fiduciary is seeking to recover restitution for stock purchases pre-dating the offenses of conviction, nor has it offered any rationale as to why restitution might be warranted for such purchases, valued as of the purchase date. This issue must, therefore, be addressed in the government's revised restitution application.

3

Second, Faibish seeks an offset for those amounts that the Synergy Fiduciary received in the form of dividends on Synergy stock and interest payments on loans that he made to Synergy. Clearly, where a fraud victim received some value in exchange for a fraudulently-induced payment, any restitution awarded should reflect an offset for the value that the victim received, since to do otherwise would be to violate the principle that a victim must receive "the full amount of, but not in excess of, his, her, or its loss." *United States v. Gonzalez*, 647 F.3d 41, 65-67 (2d Cir. 2011); *see United States v. Pescatore*, 637 F.3d 128, 138-39 (2d Cir. 2011); *United States v. Boccagna*, 450 F.3d 107, 112-15 (2d Cir. 2006). The government does not dispute that the Synergy Fiduciary "may have received $10 million from Synergy," which it believes "would have primarily been from the company's repayment of a debt obligation to him." ECF Dkt. No. 261 at 2. The government also acknowledges that, from 2008 through 2009, the Synergy Fiduciary was paid "about $182,700" in dividends. *Id.* at 2 n.2. However, the government has not indicated whether the Synergy Fiduciary was paid additional dividends in years other than 2008 and 2009, nor has it identified exactly how much he received in the form of interest payments on loans that he made to Synergy. Moreover, it does not appear that the government has deducted any such dividends or interest payments from the $21,102,170.00 restitution claim that it submitted on behalf of the Synergy Fiduciary—nor has it offered any explanation of its rationale for not deducting such sums. In the absence of such information, the Court cannot accurately set a restitution figure for this victim.

Third, while the Synergy Fiduciary avers that he is seeking restitution only for losses of principal—without any interest—the backup documentation appended to his affidavit of loss indicates that he is, in fact, seeking to recover interest that accrued on at least one loan that he made to Synergy. Problematically, "[l]oss," for purposes of restitution, under the MVRA, "is

limited to the unpaid principal, minus the value of the collateral, and may not include interest." *United States v. Rivernider*, 828 F.3d 91, 115-16 (2d Cir. 2016) (citation omitted), *cert. denied sub nom. Ponte v. United States*, 137 S. Ct. 456, 196 L. Ed. 2d 336 (2016). Despite this understanding, however, a payment schedule that the Synergy Fiduciary submitted as proof of a September 30, 2008 loan that he made to Synergy reflects that the principal amount loaned was $1,050,000.00, but that, month by month, unpaid interest was added to the principal, eventually increasing the "new principal amount" to $1,122,376.29. In connection with that loan, the Synergy Fiduciary requests restitution in the amount of $1,122,376.29—verbally expressed, he is seeking principal plus interest. Moreover, the backup documentation submitted with respect to the other eight loans for which this victim seeks restitution—which consists of a mixture of copies of promissory notes, spreadsheets, and payment schedules—does not rule out the possibility that his restitution claims related to some of those other loans also include interest. For this reason, too, the government's restitution application must be revised.

Faibish's remaining objections are meritless, and can be disposed of swiftly. He contends that restitution should be denied because, he claims, the Synergy Fiduciary "never acted in the interest of the rank and file shareholders." Faibish 6/1/17 Ltr. at 1-2. But, even if that were true, it is irrelevant, since "restitution under the MVRA may not be denied simply because the victim had greedy or dishonest motives." *United States v. Ojeikere*, 545 F.3d 220, 223 (2d Cir. 2008). Next, Faibish demands an offset for the director's fees that the Synergy Fiduciary received. Yet, as the government has explained in its papers, this victim "received director's fees in the form of stock, not cash." ECF Dkt. No. 261 at 2 n.2. Finally, Faibish asserts that the Synergy Fiduciary should not receive restitution for loans that he made after "the United States Attorney's Office had commenced its investigation . . . and subpoenas had been

served," since, according to Faibish, by that time "the precarious position of [Synergy] and its subsidiaries [was] well known." Faibish 6/1/17 Ltr. at 2. This is a close cousin of the objection that Faibish raised with respect to Signature Bank—and it fails for the same reason; that is, "any opportunity [the victim] might have had to 'mitigate' losses by detecting [the defendant's] violation sooner is irrelevant to the order of restitution." *Holland*, 394 F. App'x at 768 (citing *Thomas*, 377 F.3d at 243).

## Conclusion

In line with the foregoing, an Order of Restitution cannot be entered with respect to the Synergy Fiduciary's claim. At the same time, because the overarching goal of restitution is to compensate victims for their losses, *see, e.g.*, *Gonzalez*, 647 F.3d at 65, the government shall be afforded the opportunity to confer with the Synergy Fiduciary and to file, no later than 14 days after this Order is entered on the docket, a letter setting forth a revised restitution application consistent with this Order. In that letter, the government shall address each of the following components of the Synergy Fiduciary's restitution claim, and, as appropriate under the facts and the law, shall revise that victim's claim accordingly: (1) the compensable value, if any, of stock purchases made by the Synergy Fiduciary that pre-date the period of criminal activity for which Faibish was convicted; (2) stock dividends and loan interest payments that the Synergy Fiduciary received in exchange for fraudulently-induced payments for which he seeks restitution; and (3) accrued interest on loans for which the Synergy Fiduciary seeks restitution. The government's letter shall explain the reasons why any such reductions or revisions are—or are not—made in the revised application. If additional affidavits or supporting documentation are necessary to substantiate the revised restitution claim, the government shall append such materials to its letter.

No later than 14 days after the government's letter has been filed, Faibish may file a

responsive letter, if any.

   The parties are reminded that, in order to maintain the privacy of the victims to the greatest extent possible, as required by statute, *see* 18 U.S.C. § 3664(d)(4), they shall, to the extent it is appropriate, make any filings under seal or with redactions, in accordance with this Court's individual rules.

   So Ordered.

Dated: Brooklyn, New York
   August 15, 2017

         /s/ USDJ ERIC N. VITALIANO

         ERIC N. VITALIANO
         United States District Judge